JOHN L. KERR *et als.,* by next friend, etc., *v.* F. M. WHITE, Ex'r, and THOS. W. WHITE, Trustee, etc.

1. TRUSTEES. *Testamentary. Not required to give bond. When.* Testamentary trustees are not governed by the provisions of the Code, Sec. 1974, *et seq.,* in regard to giving bond, filing inventories, etc.
   Code cited: Sections 1974–77.

2. SAME. *Same. Chancery practice.* Before a court of equity will interfere with the execution of a testamentary trust by a trustee, some danger from the misconduct or incapacity of the trustee must be shown, or at least apprehended, with good cause.

FROM SHELBY.

Appeal from the Chancery Court. R. J. MORGAN, Chancellor.

PATTERSON & LOWE, ESTES & JACKSON and R. P. DUNCAN for appellants.

KORTRECHT, CRAFT & SCALES for defendants.
11—VOL. 9.

FREEMAN, J. delivered the opinion of the court.

This bill is filed in the name of three infant complainants, John L. Kerr, Kate B. Kerr and Julia W. Kerr, by their step-father and mother as next friend, H. T. Coffee and Julia his wife. They are of tender years, the oldest being eleven years old when the bill was filed, the youngest, since dead, four years. They reside in Memphis with their step-father.

The facts necessary to be stated are, that their grandfather died at his residence in Shelby county, Tennessee, in August, 1870, leaving a will which was duly proven by Frank M. White, the executor appointed by the testator.

By this will the testator, after other devises and bequests, gave to Thos. W. White all the rest and residue of his property, both real and personal, including houses and lots, lands, bonds, notes and stocks of every kind and description, in Georgia, Tennessee and Mississippi, or elsewhere, in trust for the benefit of his three grandchildren, (the complainants) with full power and authority to sell any portion of the same and reinvest in such other property as he may think best, to expend such amounts as may be necessary to educate them well, and on the coming of age or marrying of his grandson, to pay him over and deliver to him one-third of the same—and on the marriage or coming of age of the girls, to deliver one-half their interest to them and to settle on them for life, with remainder to their heirs, in strict settlement, the other half. The executor has not as yet settled up

Kerr *v.* White.

and paid over the fund in his hands, except about $2,500, but is probably about ready to do so.

The bill states the estate to be large, probably of the value of $250,000, consisting of lands, town property, choses in action and bonds. It seeks relief on two grounds mainly. First, that while it is not known how much of the fund has been received by the trustee, complainants are satisfied that what has been received is sufficient to provide for their education as contemplated in the will, but that White has declined to furnish the means for the education of complainants, and tuition bills are now unpaid and creditors pressing for their payment. To this portion of the bill there is an answer, explaining the reasons for any failure to pay bills, if such had accrued. We need not discuss this point, as the question is not before us on the demurrer which was put into the answer, and it is on this demurrer, with the action of chancellor on the same, the decree was made which we are to review. Suffice it to say, that from the statement in the bill it would seem the children are being educated, but the bills delayed in payment, of which the creditors might complain, but hardly the parties to this suit. However, passing from this: The questions presented by the demurrer are raised on the claim of complainants that the trustee shall give security for performance of his duties as trustee. The bill goes on the theory that White is in default, because he has omitted to enter into bond with security for the faithful discharge of his duties as it is stated, "in the manner prescribed by law," and from the whole bill and

especially the prayer for relief, it is evident this relief is based mainly, if not entirely, on the assumption that this is required by the Code in its provisions for assignees and trustees on this subject. The prayer is, that he shall give bond before this or the county court of Shelby county, conditioned as prescribed by law for the faithful discharge of his duties. In addition it is asked that the trustee be required to make the proper affidavits, returns and settlements as the law requires, and on failure to do all this, it is asked that he be removed from office. All this points unmistakably to the idea that this bill is framed on the assumption that this trustee is bound to perform these requirements of the Code before he can enter on his duties, and that this is the real question intended to be presented as the ground for the relief prayed. We will first examine the case on this assumption and in this aspect of it.

By Section 1974, and sub-sec., and succeeding section of same chapter, it is provided in substance, that any trustee or assignee to whom property exceeding the value of five thousand dollars is conveyed in trust for the benefit of creditors, sureties or other persons, unless by *them* released in writing from doing so, shall give bond for the faithful discharge of his duties imposed upon him by law and by the terms of the deed or assignment. He is also to take and subscribe an oath before the county court clerk, first, to faithfully perform the duties imposed upon him by law and by the deed or assignment; second, that he will make an inventory of the goods, chattels, lands or other

assets contained in the trust deed or assignment, which have or may come into his hands; third, that he will make a full return or cause to be filed in the office of the clerk of the county court, an account of all sales of said effects, and all moneys received or securities taken. The other sections provide for filing the bond and affidavit and its preservation by the clerk, and then for compensation of such trustees. Sec. 1977 provides for the removal of any trustee or asignee who fails to comply with these provisions, and the appointment by the county court of another trustee or receiver, who, on giving the bond and taking the oath, is to execute the trust or assignment.

It is evident from these provisions that they have no reference whatever to such a trust as the one before us—a testamentary trust, where no such duties as are contemplated in the statute are to be performed. The whole tenor of the statute and the repeated language shows it was intended to cover the case of a deed of trust or assignment for the benefit of creditors, sureties or other like cases. If the language was not too clear for doubt and did not show unmistakably the reference of the statute to such "deeds or assignments," to use its words, the title of the chapter would solve any doubt on the subject. It is, "Of trust assignments to secure creditors," thus giving a clear and unquestioned designation of its objects, and the matter of the statute in all its provisions corresponds with the purpose thus expressed. For instance, the bond is to be given for "the performance of the duties imposed by law and the terms of the deed of

assignment;" the oath is to the same effect and in same language. The return he is to make to the county court is "of all sales of said effects and all moneys received or securities taken." This is all too clear for doubt on reading the statute and giving a fair construction to its terms, even without the title, which clearly shows what the subsequent provisions were intended to embrace. We therefore hold, that the chancellor erred in holding that this trustee was bound by law, before entering upon his trust, to execute a bond for performance of his duties, unless exempted therefrom by the testator, or that he was bound under the statutes of our State to give such bond, either as to property in the State or out of it.

This probably in strictness disposes of all the questions fairly before us on this appeal which is by both parties, the one claiming that no bond could be required of him or was required by law, the other party claiming a bond for the property beyond the jurisdiction of the court.

It may not be improper, however, to remark that as to the facts stated in the bill which are now pressed in argument in favor of the relief sought on general grounds of equitable interference to protect trust property, that there is nothing in the bill to sustain such action in this case. No breach of trust is charged, no danger to it from any misconduct or unfitness of the trustee is even suggested, or that the fund is in the slightest danger from his mismanagement; on the contrary, he is admitted to be a man against whom no objection can be made personally, and even that

he is a proper and suitable person to execute the trust. All that is said on the subject is, that while he is solvent he is not worth as much as the trust fund, and therefore it is deemed hazardous that he shall have charge of it without security. Before a court of equity will interfere with the execution of a testamentary trust by a trustee, especially of this character, some danger from the misconduct or incapacity of the trustee must be shown, or at least be apprehended with good cause. See Perry on Trusts, Sec. 275–6.

The party was known to the testator, his circumstances no doubt familiar to him, no change is shown in them since his selection. He has been trusted by the giver of this bounty to complainants. He is charged with considerable discretion as to the management of the property, showing a personal trust and confidence reposed in him. There has been no violation of this confidence, none is suggested or charged as probable. It would be contrary to every sound principle to say, that under such circumstances the trustee should have the burden imposed on him of giving security for performance of his duties, when the testator had confided his property to his care without such a burden. This probably would, in many cases, defeat the purpose of the testator by deterring the party appointed from undertaking the duties imposed on such terms, and involves a reflection in advance on his faithful performance of his duties, contrary to the spirit and purpose of his appointment by the testator. These reasons would be sufficient to re-

pel such a claim, if no authority sustained the view; but the contrary is the well-established rule.

As to the other matter of the bill, that the trustee should be required to make settlements or file an inventory, and administer the trust under the direction of a court of equity, at least so far as the estate is in Tennessee, we express no opinion either way, as the question is not before us on this appeal.

A decree will be drawn in accord with this opinion and the case remanded to be proceeded in on the answer.

Costs will be paid in this court by Coffee, the next friend.